The MSPB's main position in this case is that it doesn't really matter whether Ms. Mitchell was in a time-limited or a temporary appointment, because anything other than permanent service does not count towards satisfaction of Section 7511A1C2. Well, let's assume that we accept your arguments along the way, that we reject that notion that we think that the regulation applies in these circumstances. The problem I'm having is that she ultimately only served in this, whether we call it term, time, or temporary, for less than a year. So if the government had done what you think they should have done, which is, let's say they had an NTE not to exceed a year, you think that would have been satisfactory, right? Well, I think duration is sufficient, but not always necessary for classifying something as being time-limited or being temporary. It's a totality of the circumstances analysis on top of the durational analysis, so all of the circumstances outlined in, for instance, Table 1 of our applied brief would still apply. She was still receiving benefits that temporary employees don't receive. She was still appointed under a statutory authority that does not specify temporary employees. All of those things would still apply. But why does that matter? Are you saying there's some sort of detrimental reliance? I mean, when we're looking at totality of circumstances, you're kind of calling out what would have led her to believe or appreciate. Is that where that takes us? Are you arguing that because she was led to believe based on all of the circumstances that it was a longer period that she should win because of that? Although expectations are one of the things that the court should take into consideration, it's certainly not the only thing. I mean, the guidance that we get from WIDEL, which is following Anderson, which is when you're determining whether or not the two-year service requirement has been satisfied, you look at the substance of what the position was and whether or not that best fit in terms of OPM regulations is something that is temporary or not temporary. So there could be attributes of an appointment that look temporary and at the same time attributes of that same appointment that look like they're time-limited or permanent or something else. So doesn't it come down to expectations? Sometimes it comes down to expectations, but it doesn't necessarily. I mean, it's not necessarily a detrimental reliance analysis, but you look at the totality of the circumstances and you find that that's what actually happened. Was it expected that if Ms. Mitchell passed the background investigation that her position would become permanent and continue, that her employment was going to continue? Yes. And once that did happen, was there any change in the underlying circumstances of her employment? Was she paid more? No. Did she get any additional benefits? No. So it just continued in time? Yes. There was no other change? Other than she got a piece of paper informing her that her background investigation had cleared and she was now being considered fully in her permanent position. Did the work change, and not only for Ms. Mitchell, but in general for AUSAs? If they don't have the security clearance, does that matter a lot, a little, hardly at all for the work that they're doing? I think generally it does not matter. I think for Ms. Mitchell there wasn't a difference. I can conceive, possibly, of a situation where there's some matter of pressing national security and they would only staff somebody who has a background check, but that's not happening in Social Security Administration cases. But she could have been terminated without cause, right, if she did not pass her background investigation? Not passing a background investigation is cause. Right. And you can always, at any time, be terminated if there's some national security concern because of your background. So when she was given the position or appointed to the position, there was an expectation that if she passed a background investigation check, that her employment would continue? Yes, and when she passed the background investigation, when they got the results back, it was an automatic conversion. I mean, all it was was they documented it on paper and her status on paper changed. So what is it that changes that situation from a temporary employment? Is it that in a temporary employment that the start and the end dates are defined and there's no moving beyond the end date unless it's extended or something of that nature? That is one of the attributes of a temporary position, although that is also an attribute of a time-limited position. A time-limited position is anything that is more than a year but is still fixed in time. A temporary position is something that you need to appoint someone to based on regulatory authority allowing you a temporary position. I mean, agencies are not just allowed to do temporary positions whenever they want. It has to be to address something that is identified as a temporary staffing need. Like a crisis? Exactly. Or they get certain funding for temporary positions and certain funding for permanent positions, and if there's a higher workload than normal, they can fill in the gaps with some temporary positions, but they're supposed to file paperwork with OPM certifying that there's no permanent need for an employee. This is only a temporary need. You only get a position for one year, and then at the end of one year, you can reassess, and if you say, well, we need just one more year, you can extend it for just one more year. Well, let me ask you. Let's assume we have three people, you, me, and him, and we all start on precisely the same day. My form 50, I'm an NTE not to exceed one year. You're Ms. Mitchell, NTE not to exceed 18 months, and he's not to exceed one month, but at the conclusion of the one month, they say, you know, this background check may not be done forever. We're going to extend it for another 18 months. And the background check comes through for all of us after the eighth month, as it did for Ms. Mitchell. So under your scenario, my understanding is you would say, government's okay with what they did to me. They're okay what they did with him, but Ms. Mitchell ought to get relief. And I'm having a hard time understanding why that doesn't somehow come under harmless error. Everybody's background check, we were all converted before the one year expired, and they happened to do me for one year, him for one month, and then an extra. It's hard for me to distinguish what policy or statutory reason, therefore, we would have for giving you relief and us not. Well, under the hypothetical you've given me, I don't think I would agree that what the government does to you is okay, and for Ms. Mitchell not okay, and for MSPB counsel not okay. Really? I mean, no, because I think the only difference between those scenarios is one of them is a more clear-cut violation, and one of them, I think, is still a violation, it's just not as clear-cut. I mean, if you give someone, if instead of... If hers would have been NTE, and not to exceed one year, wouldn't you agree that that fell within the statute of a temporary appointment, and that that would be okay? It certainly looks a lot more like a temporary appointment because it's not to exceed one year, and so as far as the duration, it fits the definition of a temporary appointment, but the analysis doesn't end there, because you would still go on to say, well, was she receiving the benefits of a permanent employee? Was she getting life insurance? Was she participating in TSP? Was there the expectation that this was only for the background check, and as soon as the background check was completed, no matter how long it was, there would be an automatic conversion? I mean, granted duration is, as I said before, I think sufficient to categorize something as being temporary or not, because that's what OPM uses as the definition. The totality of the circumstances analysis still considers all of those other factors, and if the substantive quality of the appointment is not the kind of thing that you give to a temporary worker, then you could find that the totality of the circumstances overcame the shortness of… Why? I mean, I guess I'm having a hard time understanding, so we're back to where we started, kind of, like beyond an argument with respect to her expectations, and then we have to look at whether there's detrimental reliance or whatever. What beyond her expectations? In other words, she's got an NTE for one year, but she's also getting all of this stuff that doesn't necessarily go with a one-year temporary appointment. So what? Well, I mean, it's not just the benefits then. I mean, the SF-50 doesn't only say NTE and then a certain ending. It also cites a regulatory authority for the appointment, and if it cites, you know, Section 213, Part 104, and says it's a temporary appointment, well, then maybe you don't have a whole lot more to argue about whether or not it's actually a temporary appointment. But if, as it was in Ms. Mitchell's case, it cites the AUSA statute as the regulatory authority for the position, even the time-limited position, that's a permanent appointment statute. There's no regulatory authority cited for it being a temporary position. So what about if we accept as a fact that in 99% of the U.S. attorney's offices throughout the country, they use this appointment so that it can bring someone on before the background check is completed, but they also do not give that person any real authority. They don't do cases. They do special training work because they don't feel comfortable in putting a non-cleared employee in an active position. Would your view of it change? Because if you look back and say, what's the policy? It is that you want somebody to have served for two years so that their progress can be evaluated before we reach the cutoff point. So if it were clear based on the circumstances that people were not doing their real job until they actually got their clearance and got converted, would that change your view? It would definitely change the analysis. I think so. I think that goes to the totality of the circumstances of which one of the things you consider is, what was the type of work that was being done? Was it the type of work that gets assigned to temporary workers, or was it the type of work that gets assigned to permanent employees? And if there's a temporary appointment preceding a permanent appointment, whereas they're doing temporary worker type work, then that goes into the totality of the circumstances. Do we have a record here with regard to the type of work she was doing for that interim period? I mean, I didn't notice anything in the record. No, there's nothing in the record. So I can't cut for her on this, right? I mean, if we're looking at that one being one factor in the totality of circumstances, we don't give that to Ms. Mitchell because we don't know based on the record what she was doing for that first eight months, right? I mean, there is no documentation that anything changed. I mean, her original SF-50 didn't say anything. There was no letter given to her explaining to her that she was getting a limited workload or anything like that. I mean, my understanding from the record is that there was no change. Is there anything in either the U.S. Attorney's Manual or some kind of DOJ document that says before clearances come in, AUSAs shall be restricted to XYZ or to avoid ABC? There is not one that I'm aware of. The only thing that I'm aware of that speaks to that point actually comes from the oral argument to this court in Roy when counsel for the MSPB explained that judges and attorneys are different as far as background check requirements and things like that. And the MSPB attorney in that case during oral argument said judges don't perform their full range of duties prior to their background check being cleared, and that's not the case for attorneys. Can I ask you a question about the table that you included in the gray brief listing of assessing benefits? And I haven't checked.  The FERS, as I read the regulation, specifically says you don't get FERS if you're temporary, but if you're coming from a position where you already have FERS, you get it, which would be her. And therefore, that seems to me neutral. So my question is, is there something similar about these other regulations governing the health benefits, the life insurance, I don't know, TSP or something, where she may have been getting all of those because the regulations that define those programs make her eligible simply because she had been working in those programs and working for Social Security Administration for many years before, in which case all of those would be neutral as well. I'm not aware of that. I don't think that there are. I mean, in my reading of the regulations, I didn't see that in any of them. Well, the FERS one is 842.105b. When an employee who's covered by FERS moves to a position listed in paragraph A, which is the temporary stuff, without a break in service or after a separation of three days or less, his or her FERS coverage will continue, which makes perfect sense to me, that they weren't going to cut all this stuff off by moving somebody into a position. So I'm just wondering how much of these benefits provisions actually weigh in her favor here. My understanding is that all of these benefits are tied to the regulation that is cited on the SF-50 as far as what is the authority for the appointment in the first place. So regardless of whether she was coming from another position or whether she was coming right out of school, she was going to have those same benefits because she was getting all of the duties and all of the benefits of a permanent employee on day one or a permanent appointee on day one. Can I just ask, suppose that the Board had jurisdiction here. What is the nature of the challenge to the termination? What do you envision happening? Is it under Chapter 43, under Chapter 75, procedural, substantive? Can you just elaborate a little bit? It would be that she was dismissed without cause, and you're not allowed to be dismissed without cause once you have employee status. And so there would be a remand and they would have to go through her termination on the merits. So they would have to reinstate her with back pay and then start again? If she were to prevail on the merits, yes. Oh, but if she doesn't prevail on the merits that she doesn't automatically because of assuming we would agree that the Board should have had jurisdiction here. I think because it's basically not disputed that she was terminated without cause, that when it goes back, the MSCB will find that. The letter said, there's a paragraph that says here, for reasons we don't think you were doing your job very well. I'm not summarizing. There's at least an assertion of something like cause. I guess I was curious in particular about whether there is a statutory or regulatory procedural violation that notice and opportunity weren't given. And I guess that is true, I gather. And so what would happen if indeed you got Board jurisdiction? Are you making an argument that for lack of required procedures, reinstatement and back pay? Yes. And when I say without cause, I mean, yes, you need notice and an opportunity to be heard, and the cause needs to have some sort of substantiation. So yes, we do have a letter giving her supervisor's opinion, but those are just unsubstantiated allegations that have not been endorsed as the official cause of her firing. The official cause was that she can be removed at will because she did not currently have the procedural rights that you get as an employee. I think Judge Waden had a question. So looking at the case of Roy versus the MSPB, it says at the very last paragraph, it says, in sum, we hold that in order to be an employee within the meaning of Section 75-11, the individual must have served continuously for at least two years in the same or similar position. And then it goes on and addresses that. Now focusing on the word continuously, there's the other case, Forrest, that dealt with tacking on, trying to tack on service that's been interrupted by what's clearly a temporary position. What is it about this case that would make us decide or that would enable us to decide that there's been a continuous service? What is it about that 18-month period where she was under the background check that we should look and say this was not temporary as defined by Roy? Well, under Roy, it was never disputed that the appointment was temporary. And so the issue presented to the court was simply something that is admitted by everyone to be temporary, interrupting two periods of permanent service. Can we reach back beyond that temporary and tack some permanent service to the present permanent service? And it's a very different legal situation than we have here. Here we have a period of permanent service to which we are trying to attack a contiguous period of time limited, which is also other than temporary service. So the issue that we find here with whether something is temporary or time limited wasn't presented in Roy. In Roy, if there was any argument to make about it being time limited, it was expressly removed. It seems that these two cases, Roy and Forrest, are based on the proposition that there's two types of employment related to these issues, temporary and permanent. But your argument seems to be that there's other types of employment that were not considered by these cases or involved in these cases. Is that correct? Yes. Under the facts of Forrest and Roy, there were only two types of employment at issue, temporary and permanent. And so when going through the language in 7511A1C2, where it said other than temporary, it could only mean permanent under those circumstances. But the phrase other than temporary, I think just by its plain language, contemplates something other than just a binary situation. Otherwise, the statute would have said permanent. But the statute says other than temporary, and up until now, the MSPB has interpreted that to include seasonal and permanent term in the competitive service and has extended its jurisdiction to all of those groups on the rationale that they are other than temporary, despite being, by definition, not permanent. Can I just double check something with you? Sure. Your view is that the result in Wydell should, in fact, have been different, in fact, would have to have been different under your analysis, and it came out the way it did because the relevant regulations and arguments simply weren't presented to the court. I think that's probably the most likely scenario. I mean, the court decided that based on classifying the employee as being under Part 316 and saying that's the best fit OPM regulation. And at the time, that was presented by the government as being the best fit, and whereas in this case, the MSPB has clearly stated she's not under Part 315. So that can't be the best fit. The best fit, therefore, is the time-limited position. That's one other question. If it's possible, your friend who's about to stand up will know more. What is the Justice Department's normal practice with respect to the AUSAs who are coming on board but they're awaiting their clearance? Was 18 months here aberrational? Do they usually say 12 or less? What's the normal practice? I don't know what the normal practice is. My understanding from looking at the case law, and this doesn't happen very often, but the few times the case law has happened, it has been appointments more than a year. Can I ask one more question, and that is I think when we started off, you made some reference to under the temporary appointment regulations, you've got one year, which may be extended. But I think under your scenario, you want us to accept that extended means you've served your one year, and at the end of one year, somebody sits down and makes a decision that we want to give you another six months, another year. Why shouldn't we be able to construe extended being this appointment, that they start off with the one year here, and they at the get-go said, well, we're not sure how long this background check is going to take, so we're going to give for one year, plus we're going to extend it at the outset for another six months. If that's what they did, let's assume hypothetically that's what they did, then that would fit right. That would fit under the regulations, and that would allow this to be a permissible temporary appointment, would it not? I don't think so. Under OPM's interpretation of its own regulation, as published in the Federal Register, OPM explained that a temporary position can be one year, at the end of which you can extend it for up to one additional year. Where do they say that? I'm sorry, but the language itself of the reg says they may extend temporary appointments. Now, maybe the best reading of that is at the end of the one-year appointment, you extend it for another year. But I'm not sure the language is that precise that it would not allow, just because you may extend it for no more than one additional year, then that means that the extension has to come at the conclusion of the first year and not at the outset. That's the interpretation you come to when you read Part 213.104, which I'm guessing you're referring to. With OPM's published interpretation of that in the Federal Register 63781, which we also have a block from, I think, in our briefing, they're saying anything that's more than a year at the outset is a time-limited appointment. And the only way to read those consistently is to say, you have to reassess at the end of the year. Otherwise, OPM defines it as a time-limited appointment, which it specifically says is not temporary, it's comparable to a term appointment in the Competitive Service. And as long as we're way over time anyway, let me ask you one other question, my colleagues. I was going to ask the government about this, but I might as well get your take first, which is, as I recall, their argument with respect to this reg, one of the things they point to with respect to the regulation is that at the conclusion it talks about the authority and it says, well, this reg only applies to these statutory provisions or these executive regulations that are enumerated at the end, and it doesn't apply to the particular provision at issue here. Do you know what argument I'm referring to? They kind of say this reg doesn't apply to this statute. Right, you're saying that Part 213 doesn't apply to 7511A. Right, and specifically because the citation of statutory authority did not include 7504, it was just 3301 and the general one. Do you have a view on that? Like, is that the way you read this, that at the end the citation to the authority is kind of a constriction, so if this particular statute isn't limited there, then it's clear that these regulatory provisions have no applicability? I don't think it's clear that they have no applicability, and I think sort of basic canons of statutory construction say when you have a bunch of regulations or laws that are all affecting the same thing and have to be applied together, you should read them consistently to the greatest extent possible. And OPM guidelines that define temporary appointment, you know, have to be read to be consistent or should be read to be consistent with 7511 because the function of 7511A1C was to extend MSPB rights to the accepted service. Part 213 implements the accepted service. So to say that these two don't apply to each other and therefore we're going to allow all kinds of inconsistencies between them, I think, just sort of defies basic canons of statutory construction. And this court in Wilder gave Chevron deference to OPM's definitions of terms that appear in 7511A1, and I think it should do so here as well. Were the provisions that OPM promulgated in Wilder to which deference was They did so more clearly than, I mean, but just because it doesn't cite them specifically, you know, it's not as clear cut as if it did cite them specifically, but that doesn't mean that they should just be ignored, especially when it, you know, leads to sort of untenable results that you have, conflicts between the regulations that define employment and the statute that determines which kinds of employment count towards which kinds of service. I mean, 7511A1 doesn't define anything. It doesn't create a new type of employment. It doesn't redefine any existing types of employment. It only says which types of positions count and which types of positions don't. And it's OPM in 214 that creates and defines what types of positions exist. So, I mean, and especially when, you know, everything is sort of in the accepted service and we're trying to figure out what is the consequence of different types of appointments in the accepted service, I think, you know, reading them such that they're consistent is something that the court should be cognizant of. Well, thank you. We'll restore three minutes of rebuttal. And since we're so over, Mr. Carney, we'll be very generous, I guess, with you if you need more time or if we need more time. Hey, please record. I wanted to start by addressing the circumstances that the petitioner contends show that the appointment was temporary. This was discussed earlier. It's on pages 12, 13, and 14 of the reply room. This is the table. Yeah, sure. And I think your Honor hit the nail on the head. If you look at the authorities cited for the Federal Employee Health Benefits Program, the FERS Program, and FEGLI, the Life Insurance Program, each of those say where you're a permanent employee and then you take a temporary appointment, but by operation of your having had these benefits as a So you're saying that the provision that I did notice for the FERS one, there are counterpart provisions. For example, the FEGLI document that is cited says you are eligible for FEGLI coverage if your full-time or part-time temporary appointment has a regular tour of duty and follows a position in which you were insured with a break in service of no more than three days. So she had a full-time position which preceded this temporary position, so she would remain eligible. And there's something like that for the health? Yeah, sure. At the top of that table, Petitioner makes two points that she follows in a position that was vacated by a permanent employee. Well, there's no tacking from one employee to the next. Ultimately, the agency... I'm sorry, what are you referring to on the detail of the table? It's the column... I'm sorry, the row that says appointment purpose slash need. The agency placed Ms. Mitchell in the permanent AUSA position vacated by a permanent predecessor. Well, the fact that her predecessor was permanent is... That kind of indicates the nature of the position, doesn't it? That it's a permanent position? Well, I don't think there's any doubt that ultimately, had Ms. Mitchell worked out to the satisfaction of the Department of Health, she would have been in a permanent position just as her predecessor was. But I don't think the fact that her predecessor was in a permanent position necessarily means that Ms. Mitchell was in a permanent position on day one. So in order to occupy this position, the person is required to have passed a background check. Is that correct? Yes, sir. And technically, you're not supposed to be occupying this position unless you've passed that background check. Yes. So you figured out a way to get around this by creating an exception, a waiver of that particular rule. Yes. It waived it while she was obtaining it. So if it's a waiver and she begins at day one in that position and she's occupying the position, it's a permanent position. Her predecessor was there on a permanent basis. And the contingency here, let's not label it temporary, but the contingency on her to continue to occupy that position is that she passed a background check. There's an expectation that if she passes a background check, then the technicality would have been satisfied, the waiver would have worked its way through and done its job, and now she continues on her employment. So if that's the case, why should we not look at the time where she passes her background check and go back to the very first point? Since it's a waiver and technically you hired her already. You've hired her. But you've undertaken this waiver. Why should we not go back and look at the first day that she started and say that was the day that her permanent position began? Well, certainly the justice could have done it in that way, but they didn't. And the initial SF-50 in this case, which documents her initial hiring, says that they chose to employ her in a temporary position. So that choice has consequences, I think. They didn't do it that way. But what's the authority for that? I mean, I understand that the 732 regulation for waiver, that's an authority for saying you may now start the job, even though the clearance is still pending. Assume that the 316 authority that was sort of guessed at in Wydell is, in fact, not applicable because that's, in fact, it turns out not to be applicable. It doesn't apply to accepted service. What's the authority for the Justice Department for an AUSA pending clearance to appoint somebody in temporary status? There's no specific authority that says, Justice Department, you can hire people under these circumstances under a temporary appointment. I would say whether they have the authority to do this is not something that the board examines. And this is in Wydell, it cited the name of the case, but that the board does not look at whether they have the authority to enter to use a temporary appointment. Right. But this isn't a question of whether it was somehow improper for them to do something. It is rather that you look at what they did to figure out whether it is, other than temporary under the statute, you try to identify the best regulatory category into which what they, in fact, did fit. This court in Wydell said it looks like 316, et cetera, to us. If that's now off the table, then what category does this fit into other than permanent subject to the clearance waiver? Well, it was not permanent. There was nothing permanent about the initial appointment. They could have on day three said, I'm sorry, Ms. Mitchell, this is not working out, you're out. Or they could have, after she passed the security clearance, there may have been an expectation, but there was no legal requirement that they offer her a subsequent position. But there's no authority that says, Justice Department can do this in this case. There's 7511, the C2, the provision that's at issue here, which says temporary positions don't count towards permanent. I mean, I think that's where they went. Well, I don't understand why you're just asserting as if everybody agrees that if they had no authority to give her this, whether we're calling it term or time or temporary appointment, if they did that without authority, why doesn't that have consequences? Which is, if they really didn't have authority to do a temporary appointment under these circumstances, then she wasn't in a temporary appointment. So we're going to put her in another category. So I think whether or not, if they in fact did not have authority to do temporary appointments in these circumstances, I think there are consequences to that. And you seem to, so I want you to explain to me why that's not on the table here. You cited an example earlier. Let's say that the Justice Department had given her a 12-month, not to exceed 12-month, temporary appointment while the background investigation was going on. I think that would have been appropriate under the OPM regulation defining temporary appointments. So I think the authority... So in your brief, page 21, you say this was no more than a minor administrative error. So are you asking us to look at this case under the rubric of harmless error, that because she served, ended up getting put in her continuous current position under less than a year, than whether or not they had originally designated it as one year versus 18 months is of no consequence? Is that what the government... I think that's part of our argument, is that in actuality the appointment only lasted for eight months, which is less than the 12-month limit in the statute. There seems to be a conflict between the OPM regulation and 7511, which talks about a two-year temporary appointment. Well, I think... Well, at least speaking for myself, I've resolved that conflict. I buy the argument that the two can be read consistently, given that the temporary appointment stuff also deals with extending for more than a year. So assume that I've rejected your argument to the contrary. So what are we left with? Your Honor, I think the definition of temporary appointment in the OPM regulation, there's no evidence that they intended to define this term as used in 7511. 7511 is never mentioned as you noted earlier. Well, I mean, the regulation says special provisions for temporary, time-limited, intermittent, or seasonal appointments in Schedule A, B, C, or D. There's no question that whatever we're calling Ms. Mitchell's position, it comes under that rubric, right? So why would we not say that this regulation applies in these circumstances? Well, Your Honor, 7511 talks about a two-year temporary appointment, and here the regulation is saying, well, you get one first, and then you can get another. Yeah, so you could end up, we could easily end up with a 24-month temporary appointment, which is entirely consistent with what the statute is talking about, right? I mean, if the statute said only one year, then there would be a problem with this regulation, because this regulation allows for temporary appointments to extend up to two years. So I guess my reading is that the two go hand-in-hand very easily. I think the point I was trying to make was, you have a statute that says two years, and then you're going to publish a regulation that says, no, it's one year, and then you can do another year. To give you two years. So there are circumstances in which you can have temporary appointments under this regulation for two years, right? So the two are entirely consistent. Okay, if I may. I'm sorry. The point I was trying to make is, you're taking something that says two years, and then saying you're going to get one, and then if you do it right, you can get another. You would think, if you're going to publish a regulation redefining or adding additional requirements to get to that two years, you would at least mention the statute where you're defining this term. Because the statute doesn't say one year and you get another. It says two. What is the purpose of the regulation if it's not to address the statute? Well, the regulation, Your Honor, never mentions the statute. But what's it hanging on? What is it that the regulation is seeking to implement? Well, the stated purpose in the Federal Register Notice is to ensure that temporary appointments, in circumstances not similar to this case, are not used to make sure that people don't get federal employment health benefits, don't get FEGLI, don't get FERS, don't get all these other benefits. Well, the petitioner got all those benefits in this case. So the purpose for which that statute was enacted is not really even relevant here. So I guess one form of the question would be what other statutory provisions besides the 7511, et cetera, use the term temporary and, therefore, would be clarified by the regulation, about the 213 regulation, if that regulation was not meant to apply to 7511. Your Honor, I don't have a direct answer to your question. I think if you look at the Federal Register Notice and see the statutes that were identified as authority, there's a good chance that the term temporary was used in one of them. Well, no. 3301 and 3302 are the most general provisions in the world. One of them is about competitive service. One of them is the president can make regulations to implement, to make the civil service work. And then there are a couple that are very specific, but they're not peculiar to temporary. And the point about 7511 and the two-year language, it doesn't just say two years. It says temporary amounting to two years. And to treat it as just saying two years would really strip out the word temporary in there. It would define temporary as anything up to two years, and, therefore, the word would actually be performing no role in the provision. It's not always the end of the world, but it's kind of a point against that reading. You know, I think the holdings in Roy and Boris, the court in Roy and Boris, there's temporary and then there's permanent, and you have to be in a permanent position. I'm not sure if that answers your question, but I think that's where we're at. Can you shed any light on what the general Justice Department practice is with respect to these new AUSAs while clearance is pending? Was this NTE 18 months aberrational, as you called it, I think an administrative error, or is this an administrative error that the Justice Department has been making for years every time a new AUSA comes up? I don't know what their practice is. I know that the general practice here of hiring under a temporary appointment is, I think, their typical practice. The length of that appointment, I'm not sure. I've seen 18 of the other cases, but I don't know a general one. The court has no additional questions? Thank you very much. I just had a couple of points I wanted to get to. First, I think when we're going through doing our analysis, the ultimate question we want to ask is what really happened? What was the position she really got? Because that's the ultimate jurisdictional question, is the preponderance of the evidence standards. We go through and we find the best fit, the more likely than not fit as to what she did. We look at things like benefits, although in this case it's possible they carried over. My understanding is that everybody gets them, regardless of whether you're a carryover or out of school, because the regulation cited on the SF-50 for the initial appointment is one that carries with it those benefits. And you look at what was the position she was taking, what was she hired for, what did she interview for, what is the person she's replacing, what were they doing? That was a permanent position. And then you say whether you want to call it time-limited or whether you want to call it permanent pending waiver or whatever it is, it's more likely than not that it wasn't temporary. And I think that's the way that the analysis here should progress. It was probably temporary with sort of a technicality of documentation. Can I just interrupt you and ask you to go back to something you said? You said that you referred to a regulation cited on the SF-50 indicating something about the benefits. That would be the 28 U.S.C. 542 at the top of her SF-50. It's the same for her. Oh, statute. Oh, sorry. Yes, I meant statute. It's the same for day one of her time-limited or permanent pending waiver or whatever you want to call it appointment. That didn't change when she was converted. Her appointment was always pursuant to that statute, and that's the statute that creates permanent AUSA appointments. That box should have said, if it was actually a temporary appointment, it would have said 214-103 because that's how temporary appointments are actually documented. It was only in the narrative portion that there said, reason for temporary appointment pending background investigation, and those are just sort of standard forms that are not legally operative. You fill them out as a documentation of an appointment, but they're not the appointments themselves. When they say something like temporary pending background investigation, that doesn't stop it from being a permanent appointment from day one or from being a time-limited appointment followed by a permanent appointment. Either way, it's not temporary. I'm sorry, can I just be absolutely clear what citation you're referring to on the SF-58? In the upper left-hand corner, it should say 28 U.S.C. 542. That's the AUSA. That's the statute that creates AUSAs. That's not a statute that has temporary positions. Okay. Thank you. We have the argument to thank both counsels. That concludes our proceedings for this morning. All rise.